IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

KG SCHIFFFAHRTSGESELLSCHAFT MS PACIFIC WINTER MBH & CO.

     *Petitioner*,

 -against-

SAFESEA TRANSPORT INC.

     *Respondent.*

Civil Action No.:

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION TO RECOGNIZE, ENFORCE AND CONFIRM A FOREIGN ARBITRATION AWARD AND <u>FOR ENTRY OF JUDGMENT</u>**

BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: 212 885-5000
lwilgus@blankrome.com

*Attorneys for Petitioner*
*KG SCHIFFAHRTSGESELLSCHAFT MS PACIFIC WINTER MBH & CO.*

Petitioner KG SCHIFFFAHRTSGESELLSCHAFT MS PACIFIC WINTER MBH & CO. ("Petitioner"), by and through its undersigned counsel, Blank Rome LLP, respectfully submits this memorandum of law in support of its motion to confirm a foreign arbitration award and to enter judgment against Respondent Safesea Transport Inc. ("Safesea") under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201, et seq. (the "New York Convention") and the United States Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").

## PRELIMINARY STATEMENT

This is an action arising under the New York Convention and the FAA to recognize, enforce and confirm a foreign arbitral award entered in London by a sole arbitrator pursuant to the Intermediate Claims Procedure of the London Maritime Arbitration Association (the "LMAA").

Petitioner and Safesea entered into a vessel charter party agreement, dated December 14, 2016, pursuant to which Petitioner, as owner of the ocean-going vessel, the MS PACIFIC WINTER (the "Vessel") agreed to charter the Vessel to Safesea for one voyage from St. Petersburg to Kolkata for the carriage of project cargo. (the "Charter Party"). The Charter Party contained an arbitration clause requiring the parties to arbitrate any disputes in cases where the claim amount is between $50,000 - $400,000, pursuant to the Intermediate Claims Procedure of the LMAA. There is no right of appeal where parties agree to be bound by the LMAA's Intermediate Claims Procedure.

After disputes arose between the parties concerning Safesea's performance of its obligations as charterer of the Vessel, Petitioner demanded arbitration. Specifically, the disputes concerned Safesea's failure to pay for various amounts rightfully due Petitioner under the Charter

Party, including demurrage and detention charges, and interest due on the late payment of freight. In particular, Petitioner claimed that, under the terms of the Charter Party, Safesea was allowed 48 hours of laytime to load the Vessel. Safesea exceeded the permitted laytime by 7 days, 11 hours, 40 minutes. That excess time counts as demurrage under the Charter Party. Moreover, the Vessel was delayed at the port of Kolkata for 6 days, 6 hours, 45 minutes due to insufficient depth of the water. Clause 16 of the Charter Party provides that delay counts as detention. Despite the terms of the Charter Party allocating responsibility for demurrage and detention charges to Safesea, Safesea refused to pay.

To resolve the disputes arising under the Charter Party, Petitioner demanded arbitration under LMAA's Intermediate Claims Procedure, and appointed Donald Chard as its arbitrator. After Safesea failed to appoint its own arbitrator, Mr. Chard was appointed as sole arbitrator to hear the parties' dispute. Thereafter, on August 28, 2017, counsel for Petitioner served Claims Submissions on behalf of Petitioner in support of Petitioner's claim. Safesea served its Points of Defence and Requests for Disclosure on November 3, 2017. On November 24, 2017, Petitioner served its Reply Submission. And, finally, on January 4, 2018, the parties served Closing Submissions and a breakdown of their respective costs. On February 15, 2018, Mr. Chard rendered a fifteen-page Final Arbitration Award (the "Final Award") in favor of Petitioner in the principal amount of Petitioner's claim, as well as costs and interest.

Based on the foregoing, Petitioner respectfully requests prompt confirmation of the Final Award and entry of judgment because none of the grounds exist to refuse confirmation of the Final Award under the New York Convention.

# PROCEDURAL HISTORY

## I. THE PARTIES

1. Petitioner, a company incorporated under the laws of Germany, is the Owner of the ocean-going vessel MS PACIFIC WINTER (the "Vessel.") Petitioner was a claimant in an arbitration (the "Arbitration") conducted in London under the terms of the London Maritime Arbitration Association ("LMAA"). Petitioner owns all right, title and interest in the February 15, 2018 final arbitral award (the "Final Award") rendered by the sole arbitrator Donald Chard (the "Arbitrator") in the Arbitration.

2. Respondent Safesea is a corporation formed under the laws of the State of New Jersey, with a principal place of business within this district at 10 Corporate Place, Suite 410, Piscataway, New Jersey. At all relevant times, Respondent was the charterer of the Vessel and was a respondent in the Arbitration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

3. Petitioner and Safesea entered into a charter party agreement, dated December 14, 2016, on an amended HEAVYLIFTVOY form ("the Charter Party.") A true and complete copy of the Charter Party is attached as **Exhibit 1** to the Declaration of Lauren B. Wilgus ("Wilgus Decl.")

4. Under the terms of the Charter Party, Petitioner agreed to charter the Vessel to Safesea for one voyage from St Petersburg to Kolkata for the carriage of project cargo.

5. Disputes arose between Petitioner and Safesea concerning Safesea's performance of its obligations under the Charter Party. Specifically, Petitioner claimed Safesea owed: (1) $27,989.47 for demurrage incurred at the Port of St. Petersburg; (2) $60,571.87 for detention

charges at the Port of Kolkata; (3) $3,822.00 for interest due on the late payment of freight; and (4) $3,321.02 for interest due on the late payment of demurrage already paid, together with interest on outstanding amounts and costs.

### III. THE ARBITRATION

6.Petitioner commenced the Arbitration pursuant to clause 41 of the Charter Party, which provides that any claim between $50,000 and $400,000 would be conducted in accordance with the LMAA's Intermediate Claims Procedure. A copy of the LMAA Intermediate Claims Procedure is attached as **Exhibit 2**.

7.In particular, clause 41 of the Charter Party, titled "BIMCO Dispute Resolution Clause" provides, in relevant part:

> *(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Charter Party shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

***

> A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

***

> In cases where the claim or any counterclaim exceeds the sum agreed for the LMAA Small Claims Procedure [less than $50,000] and neither the claim nor any counterclaim exceeds the sum of US$400,000 […] the arbitration shall be conducted in accordance with the LMAA Intermediate Claims Procedure current at the time when the arbitration proceeding (sic) are commenced.

*See* Ex. 1, pp. 17-18, ¶ 41.

8. On or about February 14, 2017, Petitioner appointed the Arbitrator. Safesea was informed of the Arbitrator's appointment by email that same day, and again by hard copy letter served on February 16, 2017. In accordance with clause 41 of the Charter Party, Petitioner asked Safesea to appoint its own arbitrator within fourteen days from the date of the Arbitrator's appointment. Safesea failed to do so. As a result, the Arbitrator was appointed as sole arbitrator for the case.

9. On August 28, 2017, Petitioner submitted its Claim Submissions to the Arbitrator. A copy of the Petitioner's Claim Submissions is attached as **Exhibit 3**.

10. On October 2, 2017, Safesea asked the Arbitrator for an additional thirty-days to respond to Petitioner's Claim Submission. Petitioner did not reject to this request.

11. On November 3, 2017, Safesea served its Points of Defence and Requests for Disclosure. At that time, Safesea's attorney raised a time-bar defense and asked the Arbitrator to address that defense as a preliminary issue. The Arbitrator informed the parties that he would address the time-bar defense and the merits of the dispute in the Award.

12. On November 17, 2017, Petitioner responded to the Requests for Disclosure and produced the following documents: Vessel's logs, stability calculation, draft forecast for Kolkata and certain correspondence between the Vessel and agent.

13. On November 24, 2017, Petitioner served its Reply Submission. A copy of the Petitioner's Reply Submissions is attached to the Wilgus Decl. as **Exhibit 4**.

14. On December 6, 2017, Petitioner produced additional documents relating to third party claims and documents relating to the period when Petitioner declined to depart the discharging port.

15. Finally, the parties served Closing Submissions and a breakdown of their respective costs. A copy of the Petitioner's Closing Submissions is attached to the Wilgus Decl. as **Exhibit 5**.

## IV. THE FINAL AWARD

16. On February 15, 2018, the Arbitrator issued the Final Award. (Wilgus Decl., **Exhibit 6**.

17. In the Final Award, the Arbitrator held Petitioner's claims are not time-barred.

18. The Final Award also awarded Petitioner's claims as follows:

   a. Petitioner's claim for the balance of outstanding demurrage in the amount of **$27,989.47**, plus interest on the award at the average rate of 4.5% per annum or pro rata compounded at three monthly rests from January 30, 2017, up to the date of this Award and thereafter at the same rate and on the same terms until the date of payment by the Respondent;

   b. Petitioner's claim for detention damages in the amount of **$60,571.87**, plus interest on the award at the average rate of 4.5% per annum or pro rata compounded at three monthly rests from August 3, 2017, up to the date of this award and thereafter at the same rate and on the same terms until the date of payment by the Respondent;

   c. Petitioner's claim for interest on late payments in the amount of **$7,019.73**, plus interest on the award at the average rate of 4.5% per annum or pro rata compounded at three monthly

      rests from the date of the award until the date of payment by the Respondent;

d. Petitioner's costs in the amount of **£10,022.81 (USD $13,170.30)**, together with interest thereon at the rate of 4.5% per annum or pro rata compounded at three monthly rests, to run from the date of the award;

e. The Arbitrator's costs in the amount of **£3,450.00 (USD $4,533.42)**, inclusive of fees and interlocutory charges. If Petitioner paid the Arbitrator's costs in the first instance, Respondent must reimburse any amounts paid, together with interest thereon at the rate of 4.5% per annum or pro rata compounded at three monthly rests, to run from the date of payment by the Petitioner until the date of reimbursement.

(Wilgus Decl., **Exhibit 6**, pp. 2-3.)

19.    The full amount awarded to Petitioner totals **$122,367.86**, including the principal amount of the award, plus interest and costs. This amount is based on an exchange rate of £1 = USD $1.31, as determined by www.oanda.com and compound interest calculations, as determined by www.egalegal.com.

20.    The Final Award provides interest will continue to accrue until Safesea remits payment.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION TO RECOGNIZE AND ENFORCE THE AWARD

#### A. The Legal Standard

Section 201 of Title 9 of the United States Code states that "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States Courts in accordance with this chapter." *SEI Societa Esplosivi Industriali SpA v. L-3 Fuzing & Ordnance Sys.*, 843 F. Supp. 2d 509, 512 (D. Del. 2012). Article I of the New York

Convention states that it "shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between people, whether physical or legal." *SEI Societa*, 843 F. Supp. 2d at 512. United States courts must confirm foreign arbitral awards falling under the New York Convention except in very limited circumstances. *Id*. Section 207 of Title 9 of the United States Code states:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

*See* 9 U.S.C.S. § 207.

The "grounds for refusal or deferral of recognition or enforcement of the award" allowable under Article V of the New York Convention are:

> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
>
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
>
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration

> may be recognized and enforced; or
>
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
>
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

*See* 9 U.S.C.S. §§ 201-208; *SEI Societa*, 843 F. Supp. 2d at 512-513.

Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that (a) the subject matter of the difference is not capable of settlement by arbitration under the law of that country; or (b) the recognition or enforcement of the award would be contrary to the public policy of that country.

### B. The Charter Party and the Final Award Fall Under the New York Convention

This application is made pursuant to the New York Convention. The Final Award falls within the New York Convention because (i) both the United States and the United Kingdom are Contracting States under the Convention;[1] and (ii) the relevant contract—the Charter Party—is commercial in nature. Under the FAA, an "arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in Section 2 of this title, falls under the Convention." 9 U.S.C. § 202. The Charter Party here is unquestionably commercial in nature and falls within

---

[1] See http://www.newyorkconvention.org/contracting-states/list-of-contracting-states

the convention. *See also* 9 U.S.C. § 2 ("A written provision in any maritime transaction … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *Century Indemnity Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3rd Cir. 2009) ("[A]s a matter of federal law" written provision to arbitrate in maritime contract is valid and enforceable).

Accordingly, the Final Award falls squarely within the New York Convention.

### C. The Court Should Confirm the Final Award and Enter Judgment Because No Defense Exists Under the New York Convention

"As the Supreme court explained, the principal purpose for acceding to the Convention was to 'encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'" *Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3rd Cir. 2006) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). "Thus, in reviewing a foreign arbitration award decided pursuant to the Convention, "a district court's role is limited - it must confirm the award unless one of the grounds for refusal specified in [Article V of] the Convention applies to the underlying award." *Ingenieria, Maquinaria Y Equipos de Colombia S.A. v. ATTS, Inc.*, 2017 U.S. Dist. LEXIS 202863, at *9 (D.N.J. Dec. 8, 2017) (quoting *Admart AG*, 457 F.3d at 307).

To obtain enforcement of an arbitral award, a party may apply to federal district court, attaching copies of the arbitral award and the agreement to arbitrate. Once these requirements are complied with, "[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition specified in the said Convention." 9 U.S.C. § 207. The party opposing

confirmation has the burden of demonstrating that there is a defense to recognition and enforcement under Article V of the Convention. *E. Land Retail LTD v. Sky Mart Global LLC*, 2014 U.S. Dist. LEXIS 164225, at *4 (D.N.J. Nov. 21, 2014). The burden of challenging confirmation of an award is a "heavy" one. *Zeiler v. Deitsch*, 500 F.3d 157, 1764 (2d Cir. 2007) (*quoting Encyclopedia Universalis S.A. v. Encyclopedia Britannica, Inc.*, 403 F.3d 85,90 (2d Cir. 2005).

Article V(1) of the Convention sets out the grounds upon which "[r]ecognition and enforcement of the award may be refused." None of the grounds exist here.[2]

First, Article V(1)(a) of the New York Convention provides a defense when the contract to arbitrate is invalid. This defense is inapplicable here since the agreement to arbitrate contained in the Charter Party is plainly enforceable under the FAA.

Second, Article V(1)(b) of the New York Convention provides a defense when the party against whom the award is made was not given notice of the appointment of the arbitrator or the arbitration proceedings or was otherwise unable to present its case. Here, Safesea was given notice of the arbitration by email dated February 14, 2017, and by hard copy letter served on February 16, 2017. Moreover, Safesea participated in the arbitration and filed Points of Defence and Requests for Disclosure and Closing Submissions. Therefore, Safesea is unable to rely on Article V(1)(b) of the Convention as a defense to recognition and enforcement of the Award.

Third, Article V(1)(c) of the New York Convention provides a defense when the award deals with a dispute not contemplated by or not falling within the terms of the parties' arbitration agreement, or the award contains decisions on matters beyond the scope of the arbitration

---

[2] Safesea also is unable to rely on any of the provisions set forth in Article V(2) to oppose recognition and enforcement.

agreement. Here, however, the arbitration agreement of the Charter Party applied to "any dispute arising out of or in connection with" the Charter Party. Because the scope of the parties' arbitration clause is broad and applies to "any" dispute, without limitation, Safesea cannot invoke Article V(1)(c) as a basis for avoiding recognition and enforcement of the Award.

Fourth, Article V(1)(d) of the New York Convention provides a defense when the composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties. Here, again, this defense to recognition and enforcement of the Award is not applicable as the arbitration was conducted pursuant to the LMAA Intermediate Claims Procedure, as expressly provided for by the Charter Party and the Arbitrator was appointed pursuant to that procedure.

Finally, Article V(1)(e) of the New York Convention provides a defense when the award had not yet become binding on the parties or has been set aside or suspended by a competent authority in the country where the award was made. Here, the Award is "final" by its own terms and no right of appeal exists under the LMAA Intermediate Claims Procedure. As such, Safesea has no basis for invoking Article V(1)(e) in order to avoid recognition and enforcement of the Award.

Because Safesea cannot prove one or more grounds for refusal exists under Article V, the Final Award must be confirmed and judgment entered thereon. *Admart AG*, 457 F.3d at 307; *SEI Societa*, 843 F. Supp. 2d at 513; 9 U.S.C. § 207.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an order granting Petitioner's motion to recognize, enforce and confirm the foreign arbitration award in favor of Petitioner and to enter

judgment thereon in the amount of $122,367.86, plus post-judgment interest pursuant to 28 U.S.C.§ 1961, together with the costs and attorneys' fees incurred in connection with the Petition.

Dated: February 5, 2019

                                            BLANK ROME LLP

                                            By: /s/ *Lauren B. Wilgus*

                                            Lauren B. Wilgus
                                            The Chrysler Building
                                            405 Lexington Avenue
                                            New York, New York 10174
                                            Tel:  212 885-5000
                                            lwilgus@blankrome.com

                                            *Attorneys for Petitioner*
                                            *KG SCHIFFAHRTSGESELLSCHAFT MS*
                                            *PACIFIC WINTER MBH & CO.*